UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Constance Glover, | ) | CASE NO. 1:11 CV 2709 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Small Bone Innovations, Inc., et al., | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

### Introduction

This matter is before the Court upon Artimplant AB's Motion to Dismiss (Doc. 26) and Artimplant USA Inc.'s Motion to Dismiss (Doc. 27). This is a products liability case involving a medical device implant. For the following reasons, Artimplant AB's Motion is DENIED and Artimplant USA's motion is DENIED except as to Count Four.

### Facts

Plaintiff Constance Glover originally filed her Complaint in the Lorain County Court of Common Pleas against defendants Lorraine Doyle, M.D., Small Bone Innovations, Inc., Artimplant USA, Inc., and Artimplant AB. The matter was removed to this Court on the basis

1

of diversity of citizenship. Subsequently, upon the unopposed Joint Motion to Sever and Remand filed by defendants Artimplant AB, Artimplant USA, Inc., and Small Bone Innovations, Inc., the Court severed and remanded to the state court plaintiff's medical malpractice claims against defendant Lorraine Doyle, M.D.

Thereafter, Artimplant AB moved to dismiss for lack of personal jurisdiction or failure to state a claim. Plaintiff filed an opposition to the motion and a motion for leave to amend her Complaint. The Court granted leave to amend and a First Amended Complaint against defendants Small Bone Innovations, Inc., Artimplant USA, Inc., and Artimplant AB was filed. The First Amended Complaint alleges the following. Defendants manufacture, distribute, and/or promote the medical device implant known as the Artelon CMC Spacer (hereafter, the Spacer) which is designed for parties suffering from early to mid-stage osteoarthritis of the carpometacarpal joint, also known as the basal thumb joint. Specifically, Artimplant AB is the manufacturer of the Spacer, AUSA is the manufacturer and/or distributor of the Spacer, and Small Bone Innovations, Inc. is the distributor of the Spacer in the United States. The Spacer is shaped like the letter "T" and is surgically implanted. The Spacer material was patented in 2000, and the Spacer itself was approved for marketing and sale in the United States by the USFDA in September 2004 through the FDA's 510(k) approval process.

The Spacer is comprised of two materials, one non-biodegradable and one biodegradable (known as e-polycaprolactone) which dissolves over a period of six years after implantation. In many patients, including plaintiff, the Spacer triggers an autoimmune response as the biodegradable material degrades over time. The patient suffers increased

pain, failure of the Spacer, and requires surgery for the Spacer's removal.

During the 510(k) approval process, one or more of the defendants claimed the Spacer was substantially equivalent to "the Avanta Implant" because both are T shaped basal thumb joint implants, although the Avanta, unlike the Spacer, is made of silicone and not designed to break down and be absorbed in the joint space. Representations were also made that the Spacer was composed of the same material as bio-absorbable sutures.

No previous implant device "was ever made from e-polycaprolactone and also used in a joint bearing application such as the basal thumb joint, where the implant is subjected to intense compressive and shearing loads."

Because of the biodegradable material from which it is made and the joint bearing stress to which it is subjected, the Spacer can break down prematurely, cause a foreign body reaction, and/or fail which requires further surgery and removal of the device. This has been reported in peer-reviewed medical journal articles.

At the time of the FDA approval, there was very little clinical evidence that the Spacer was safe and effective for its intended use. Despite these facts, defendants marketed, sold, and continue to sell the Spacer throughout the United States. Defendants have failed to disclose in their labeling or advertising that the Spacer may break down prematurely, cause a foreign body reaction, and/or fail.

As a result of having the Spacer implanted, plaintiff has been exposed to a hazardous and dangerous medical device that is unsafe for its intended use and has caused plaintiff to suffer an increased pain in her CMC joint, substantial and permanent loss of hand function, wage loss, corrective surgery, and medical costs. Defendants should have known of the

3

Spacer's defective propensities but failed to warn plaintiff or her physicians of the risks.

The First Amended Complaint, brought under the Ohio Products Liability Act, sets forth four claims. Count One alleges defective design. Count Two alleges inadequate warning. Count Three alleges liability for failure to conform to representations. Count Four alleges alternative liability as a supplier against AUSA and Small Bone Innovations, Inc.

This matter is before the Court upon Artimplant AB's Rules 12(b)(2) and 12(b)(6) Motion to Dismiss and Artimplant USA Inc.'s Rule 12(b)(6) Motion to Dismiss.[1]

**<u>Standard of Review</u>**

"Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). We assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Management Corp.,* 2009 WL 1884445 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008) ). In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett,* 2009 WL 1505256 (6th Cir. May 27, 2009) (citing *In*

---

[1] Despite receiving additional time to respond to both motions, plaintiff filed an opposition to the motions solely on the basis of failure to state a claim. Plaintiff states that she is incorporating her previous brief as to the personal jurisdiction issue concerning Artimplant AB. Plaintiff should be aware that the original Complaint is "a nullity because an amended complaint supercedes all prior complaints." *111 Debt Acquisition Holdings, LLC v. Six Ventures LTD,* 413 Fed.Appx. 824 (6th Cir. 2011) (citations omitted). Therefore, it is improper to attempt to incorporate the previously-filed brief. Nonetheless, because defendants do not object, the Court has considered it.

4

*re Sofamor Danek Group, Inc*., 123 F.3d 394, 400 (6th Cir.1997). "To survive a Rule 12(b)(6) motion, the nonmoving party must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level."*ABS Industries, Inc. ex rel. ABS Litigation Trust v. Fifth Third Bank,* 2009 WL 1811915 (6th Cir. June 25, 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir.2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In *Twombly*, the court held that to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.

### Discussion

### (1) Artimplant AB's Motion to Dismiss

This defendant moves to dismiss on the basis of lack of personal jurisdiction and failure to state a claim.

### (a) personal jurisdiction

Defendant contends that the Court lacks personal jurisdiction over it. "In a diversity case, a plaintiff must satisfy the state-law requirements for personal jurisdiction. Thus, plaintiff must demonstrate that both due process and Ohio's long-arm statute are satisfied. Since the Sixth Circuit has recognized that Ohio's long-arm statute is not coterminous with federal constitutional limits, a court begins by analyzing whether the requirements of Ohio's

5

long-arm statute are met. It then separately considers whether the exercise of jurisdiction would comport with due process." *Schneider v. Hardesty,* 669 F.3d 693 (6th Cir. 2012) (citations omitted). Plaintiff bears the burden of establishing the existence of jurisdiction. *Brunner v. Hampson*, 441 F.3d 457 (6th Cir. 2006). "When the district court 'rules on written submissions alone' the burden consists of 'a prima facie showing that personal jurisdiction exists.' " *Schneider,* 669 F.3d at 697.

### (i) Ohio's long-arm statute

Ohio's long-arm statute establishes a statutory basis for jurisdiction over foreign defendants. Ohio Revised Code § 2307.382(A). Plaintiff alleges that defendant continually transacts business in this state and derives substantial revenue from the sale of goods here.

In pertinent part, the statute states:

A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

\*\*\*

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]

In her brief, plaintiff submits evidence in support of her contention that Artimplant AB receives substantial revenue from its Artelon Spacers used and consumed in Ohio, receiving royalties for those sold. (Doc. 22 Exs. H, I) Defendant disputes that the level of royalties is substantial, but plaintiff has at least made a prima facie showing as required.

### (ii) Due Process

6

The relevant outlines are well-established: "Due process requires that a defendant have minimum contacts with the forum State such that he should reasonably anticipate being haled into court there. The presence of such contacts ensures that the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. As a general rule, the sovereign's exercise of power requires some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Schneider,* 669 F.3d at 701 (internal citations and quotations marks omitted). "There are two forms of personal jurisdiction: general and specific. General jurisdiction is found where contacts are so continuous and systematic as to render a foreign defendant essentially at home in the forum State. Specific jurisdiction depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (internal citations and quotation marks omitted).

Where specific jurisdiction is relied upon, the Sixth Circuit uses a three-part analysis to determine whether it accords with due process where the court must find (1) purposeful availment of the privilege of acting in the forum state or causing a consequence in the forum state, (2) a cause of action arising from activities in the state, and (3) a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Id.*

Defendant submits the declaration of Kjell Tornbring, its Chief Executive Officer, who states the following. Defendant, a corporation organized and existing under the laws of Sweden, is in the business of designing and manufacturing degradable medical implants for

7

human consumption. It conducts all of its operations outside the United States. None of its employees, or the property, equipment, or facilities, that it either owns, rents, or controls, are located in Ohio. The Spacers were originally designed and have always been manufactured in Sweden. Defendant has never marketed a Spacer directly to an Ohio physician. Defendant has never filed articles of incorporation in Ohio, and is not registered to do business in this state. Defendant does not own or rent property in Ohio, does not pay taxes in Ohio, does not maintain a bank account in Ohio, does not maintain a corporate office or other facility in Ohio, and does not direct any of its advertising specifically towards Ohio residents or advertise in any publications that are directed primarily towards Ohio residents. Defendant has one U.S. subsidiary corporation which is AUSA. AUSA, a Delaware corporation which operates from an office in Denver, has no employees who reside in Ohio. (Tornbring decl.)

Relying on *Estate of Thomson v. Toyota Motor Corporation Worldwide*, 545 F.3d 357 (6th Cir. 2008), plaintiff argues that Artimplant AB is the alter ego of AUSA which has not disputed personal jurisdiction herein.[2] In *Estate of Thomson*, the Sixth Circuit recognized the use of the alter ego theory to exercise personal jurisdiction and stated that "in the parent-subsidiary context, [this theory] provides that a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Id.* (citations and quotation marks omitted) The court noted seven factors to be considered: "(1) sharing the same employees and corporate officers; (2) engaging in the

---

[2] Plaintiff asserts that Artimplant AB has impliedly consented to personal jurisdiction as it has not moved to dismiss on this basis. Defendant does not specifically dispute this.

same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns and financial statements; and (7) exerting control over the daily affairs of another corporation."*Id.* If this Court finds that moving defendant is the alter ego of AUSA whose personal jurisdiction is not in dispute, it would be proper to exercise jurisdiction over it.

Plaintiff asserts that the majority of the factors weigh in favor of this defendant being considered an alter ego of AUSA.[3]

**1) sharing the same employees and corporate officers; (7) exerting control over the daily affairs of another corporation**: Plaintiff asserts that from 2005 to the present, the actions of AUSA have been controlled exclusively by the corporate officers of Artimplant AB.  Plaintiff asserts that from 2005 through 2007, Ulf Akerblom, AUSA's President and CEO, was the only corporate officer of AUSA.  In support of this statement, plaintiff submits two pages from the deposition of Alfred Michini wherein Michini testified that Ulf was President and CEO of AUSA from its inception in 2005 until 2007.  (Doc. 22 Ex. D, 12, 28) Plaintiff also submits Artimplant's 2006 and 2007 Organizational Charts which plaintiff asserts show that Ulf Akerblom was also Executive Officer for Sales and Marketing for Artimplant AB during that same period.  (Doc. 22 Ex. E) The Organizational Chart does

---

[3] Plaintiff relies on evidence filed in a mass tort action involving the Spacer pending in a state court in Pennsylvania.  Defendant does not object to consideration of this evidence, and also submits deposition testimony filed in that case.

Additionally, plaintiff asserts that this defendant moved to dismiss on the same basis in that case.  Plaintiff states that the Pennsylvania state court found this defendant to be an alter ego of AUSA for the same reasons which plaintiff asserts herein.

9

identify Ulf Akerblom under the title "Sales and Marketing." Plaintiff also points to answers to interrogatories which show that since Akerblom was terminated, AUSA's daily operations have been governed by its Board of Directors, and AUSA's Board is composed of Artimplant AB's Officers. (*Id.* Ex. F) Artimplant AB CEO Thornbring testified that he and Artimplant AB's CFO have the ultimate decision-making authority for AUSA.

      **(2) engaging in the same business enterprise:** An Artimplant AB press release identifies AUSA as a "representation office." Plaintiff asserts that this shows the two are engaged in the same business enterprise.

      **(3) having the same address and phone lines:** Artimplant AB and AUSA share the same website, although not the same physical address and phone line. (Ex. G)

      **(4) using the same assets**: Michini testified that Artimplant AB is authorized to write checks from AUSA's bank accounts, AUSA expenditures are approved by Artimplant AB, and AUSA was partially financed by a loan from Artimplaint AB. (Ex. D 89-91, 75)

      Without specifically addressing or disputing the evidence relied upon by plaintiff, defendant argues that it and AUSA have consistently observed corporate formalities and recognized separate corporate structures. AUSA has its own offices in Pennsylvania and is independently incorporated in Delaware. It submits its own corporate filings and has its own stock certificates. (Doc. 32 Exs. B, C, D) AUSA submits its own tax filings to the State of Delaware, has its own bylaws and Articles of Incorporation, holds annual meetings and records minutes of those meetings, and solicits independent financial audits. (*Id.* Exs. E, F, G, H, B) AUSA employs its own sales force. AUSA's acting CFO testified that he compiled its monthly financial statements and reported to Artimplant AB's CFO. (*Id.* Ex. B) On this

10

basis, defendant contends that plaintiff produced no evidence that an unusual level of control existed over AUSA by Artimplant AB beyond the level of supervision that a parent company exerts over a subsidiary.

The Court finds that the majority of factors weigh in favor of finding Artimplant AB to be the alter ego of AUSA for purposes of establishing jurisdiction. Defendant does not dispute that since AUSA began in 2005, its corporate officers have been the officers and employees of Artimplant AB, that the two corporations share a website, and AUSA is described as a "representation office" of Artimplant AB. While defendant shows that it has observed corporate formalities, it does not dispute that its assets overlap with AUSA and the latter was partially financed by a loan from Artimplaint AB. Artimplant AB oversees and controls the operational decisions for AUSA.

For these reasons, Artimplant AB's request for dismissal on the basis of personal jurisdiction is denied.

**(b) failure to state a claim**

Given that the arguments presented by this defendant are identical to those presented by AUSA and this defendant incorporates the arguments made by AUSA, the Court will address the sufficiency of the Amended Complaint below in addressing AUSA's motion.

**(2) AUSA's Motion to Dismiss**

Defendant AUSA moves to dismiss on the basis that the First Amended Complaint fails to state a claim, and only consists of conclusory allegations unsupported by allegations of fact.

Count One alleges defective design or formulation given that the foreseeable risks

11

associated with the design and formulation of the Spacer exceeded its benefits. *See* O.R.C. 2307.75 ("[A] product is defective in design or formulation if ... the foreseeable risks associated with its design or formulation ... exceeded the benefits associated with that design or formulation...")

Defendant contends that plaintiff does not include facts identifying the risks or grounds for foreseeability, or showing that risk exceeds benefit. Defendant also maintains that plaintiff does not define "joint-bearing application" or allege facts demonstrating the relevance of that concept. Nor, defendant asserts, does plaintiff allege facts purporting to show the inadequacy of clinical testing, that the medical community lacked awareness of the risk of inflammatory reaction in the context of an implantable device, or the nature or extent of the warning required. Nor does plaintiff allege facts showing that the Spacer is defective and unreasonably dangerous or that a defective and unreasonably dangerous condition of the device proximately caused her injuries. Defendant points out that while plaintiff asserts that the Spacer may prematurely degrade and/or ultimately fail, she does not allege facts suggesting that this occurred with the Spacer she received or that it was the cause of her alleged injuries.

The Amended Complaint cites the following bases for plaintiff's allegation that the foreseeable risks associated with the design and formulation of the Spacer exceeded its benefits: The material used in the Spacer had never been previously used in a joint bearing application where the material would be subjected to significant compressive and shearing loads; there was very little clinical evidence that the device was safe and effective for its intended use; the study the Swedish manufacturer and Artimplant AB relied upon when

12

seeking FDA approval showed that 20% of the patients in the study suffered an adverse inflammatory reaction to the material from which the Spacer is made; the risk of an inflammatory response, including but not limited to osteolysis and other serious post-operative problems, outweighed the Spacer's possible benefits; defendants failed to conduct necessary tests and studies to determine whether or not the Spacer was unreasonably dangerous; defendants failed to instruct or warn the medical community that they had not yet adequately established that the Spacer was safe for its designed and intended use; defendants failed to disclose to the medical community that implantation of the Spacer could result in an adverse inflammatory reaction with associated osteolysis and could cause serious and permanent injury to the basal thumb joint that would require, among other things, a revision surgery to remove the defective Spacer; and defendants failed to disclose to the medical community that there were no studies or tests that showed that the Spacer implantation procedure was a safe and effective alternative to a previously used procedure.

In her brief, plaintiff points to factors set forth in O.R.C. § 2307.75 (B) to be considered in weighing foreseeability:

> The likely awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm;
>
> The likelihood that that design or formulation would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;
>
> The extent to which that design or formulation conformed to any applicable public or private product standard that was in effect when the product left the control of its manufacturer;
>
> The extent to which that design or formulation is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

13

Plaintiff points to four theories stated in her Amended Complaint which she contends demonstrate that the Spacer was risky considering the statutory factors:

> First, because users were not informed as to the risks of harm inherent in the Spacer, they would not be aware of those risks. Second, this particular formulation, utilizing e-polycaprolactone creates a very high risk of harm when used in the CMC joint, which anecdotal evidence and scientific studies have demonstrated. Third, no other manufacturer has ever utilized this particular design. Fourth, ... a reasonable consumer, such as Ms. Glover, would not expect this design to be dangerous, since the product is marketed as being safe for this use to physicians and ultimate consumers.

(Doc. 30 at 6)

Defendant's reply brief does not respond to plaintiff's brief, but merely restates (mostly verbatim) the arguments set forth in the motion. Plaintiff need not prove the viability of her claim at this stage, but she has plead sufficient factual content to support a reasonable inference of liability.

Defendant maintains that while plaintiff alleges that the Spacer may prematurely degrade and/or ultimately fail, she does not allege that this occurred with her or was the cause of her injuries. The Court notes that the Amended Complaint's specific allegations regarding plaintiff's Spacer and causation are sparse, but dismissal on this basis is not warranted. The factual background of the Amended Complaint is primarily concerned with the inadequacy of the Spacer, and this background information was presumably taken from the Pennsylvania state court action. With regard to plaintiff, the Amended Complaint alleges that "in many patients, including plaintiff, the Spacer triggers an autoimmune response as the biodegradable material degrades over time." This does not specifically allege that plaintiff's Spacer prematurely degraded or failed, but at the motion to dismiss stage the Court may infer from plaintiff's other allegations that plaintiff's Spacer did so. Defendants correctly point out that

14

plaintiff does not even allege when or where her Spacer was implanted. Plaintiff only alleges that "as a result of having the Spacer implanted, plaintiff has been exposed to a hazardous and dangerous medical device... and has caused injuries to plaintiff ..." including pain, loss of hand function, and extensive corrective surgery. Given that the Court must accept direct or inferential allegations regarding the elements of the claim, *Gardner v. U.S.,* 443 Fed.Appx. 70 (6th Cir. 2011) (citations omitted), these allegations are sufficient to withstand dismissal at this stage.

Count Two alleges inadequate warning and/or instruction. *See* O.R.C. § 2307.76 ("A product is defective due to inadequate warning or instruction if the manufacturer knew or, in the exercise of reasonable care, should have known about a risk associated with the product that allegedly caused the harm for which the plaintiff seeks damages, and if the manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause the type of harm for which the plaintiff seeks compensation and in light of the likely seriousness of that harm.") The Amended Complaint alleges that "defendants negligently failed to warn about clinical trials, *in vivo* and *in vitro* testing and study, and inadequately reported the results of such trials," and that defendants negligently failed to warn before and after the Spacer was sold and implanted even though they knew the risk of injury.

Count Three alleges liability for nonconformance with manufacturer's representations. *See* O.R.C. § 2307.77 ("A product is defective when it does not conform to a representation made by its manufacturer.") The Amended Complaint alleges that after defendants became aware of the risks of the Spacer, they failed to communicate to plaintiff and/or plaintiff's

physician that the Spacer was defectively designed and implantation would likely have adverse consequences.

Defendants address Counts Two and Three together and merely maintain that the claims are too vague and fail to set forth how the warnings or reporting to the medical community and patients were deficient, and that plaintiff does not demonstrate how the alleged deficiencies caused her injuries.

Plaintiff points out that the Amended Complaint alleges inadequate warning in the following ways:  The material used in the Spacer had never been previously used in this manner,  there was little clinical evidence that the device was safe and effective for its intended use, a study Artimplant AB relied upon when seeking FDA approval showed that 20% of the patients in the study suffered an adverse inflammatory reaction to the material, the risk of an inflammatory response outweighed the Spacer's possible benefits, defendants failed to conduct necessary tests and studies to determine whether or not the Spacer was unreasonably dangerous, and defendants failed to instruct or warn the medical community that they had not yet adequately established that the Spacer was safe for its designed and intended use. With regard to non-conformance, plaintiff points to her allegations that the Spacer's labeling and advertising failed to disclose the risk of early breakdown and foreign body reaction, and that defendants wrongly informed consumers that testing showed the Spacer was safe for its intended use.

Plaintiff alleges that the failure to warn was a substantial factor in bringing about her injuries because they would not have occurred but for her use of the Spacer and defendants' failure to warn her or her doctors of the defective design.

16

Again, defendant's reply brief only restates its original arguments and does not respond to plaintiff's assertions. Defendants do not demonstrate that dismissal of the inadequate warning or nonconformance claims are justified at this early stage. The Court finds that the Amended Complaint at least contains either direct or inferential allegations respecting the elements of these claims.

Count Four alleges that if AUSA and/or Small Bone Innovations, Inc. are determined not to be a manufacturer of the Spacer, then they are suppliers. Plaintiff asserts in her brief that in the event the Court finds no personal jurisdiction over Artimplant AB, then AUSA should be held liable as a supplier. But, the Court has exercised jurisdiction over the former. Therefore, this claim is dismissed as to AUSA.

**Conclusion**

For the foregoing reasons, Artimplant AB's Motion to Dismiss is denied and Artimplant USA Inc.'s Motion to Dismiss is denied except as to Count Four.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 6/26/12